(107 So. 311)

No. 25409.

### JURGENS v. WARMOTH.

(Feb. 1, 1926.)

*(Syllabus by Editorial Staff.)*

1. Sales ⬤⟿81(7)—Contract held not to require buyer of building material to remove it from plantation within stated period, but only from buildings (Civ. Code, arts. 1957, 1958, 2474).

Provision in contract, executed and prepared by seller, for sale of building material located on seller's plantation, that material, so far as buyer saw fit to remove it from buildings, must be removed within six months, being ambiguous, *held* that, under Civ. Code, arts. 1957, 1958, 2474, construing contract against seller, buyer was required only to remove material from buildings and not from plantation, within six months.

2. Sales ⬤⟿81(7)—Buyer's conduct held not to show acquiescence in seller's construction of contract, in view of buyer's explanation of his conduct.

Fact that buyer of building material attempted to remove it from plantation on which buildings were located, within six months after signing of contract requiring removal of material within six months, *held* not to show that buyer construed such requirement to mean removal from plantation, in view of buyer's explanation of such conduct.

Appeal from Twenty-Ninth Judicial District Court, Parish of Plaquemine; Leander H. Perez, Judge.

Action by George B. Jurgens against H. C. Warmoth, wherein defendant filed a re-conventional demand. Judgment was rendered for defendant, rejecting plaintiff's demand, and condemning him to pay defendant on latter's reconventional demand, and plaintiff appeals. Judgment annulled and rendered.

Oliver S. Livaudais, of New Orleans, for appellant.

John R. Perez, of New Orleans, for appellee.

O'NIELL, C. J. Plaintiff claims a lot of old building material on the defendant's Magnolia plantation, having bought from defendant the material that composed the old sugar house and boarding house on the plantation. This suit is for possession of the material and for $1,000 damages, alleged to have been caused by the defendant's refusing to let plaintiff remove the material. The defendant, answering the suit, contended that, by the terms of the contract, he had sold to plaintiff only such material composing the buildings (excepting and reserving the boiler shed and brick chimney connected with it, and the tanks, water pipes, tower tank, cane disintegrator, and all machinery and implements) as the buyer saw fit to remove from the plantation within six months after the date of the contract; and that, as the material sued for remained on the plantation after that time, that is, after the 27th of July, 1921, it belonged to him, defendant. He averred that plaintiff had taken away $2,000 worth of the material after the 27th of July, 1921, and he prayed for a judgment for the amount. The case was tried on the issues so presented, resulting in a judgment for the defendant, rejecting the plaintiff's demand, and condemning him to pay defendant $419.22 on his reconventional demand for the value of the material removed from the plantation after the 27th of July, 1921. The plaintiff has appealed from the decision.

The judgment of the district court is based upon an interpretation of the seventh paragraph of the contract, dated the 27th of January, 1921, viz.:

"This is to show that I have, as it stands to-day, sold to Mr. George B. Jurgens, Jr., the bricks, timber, slate, iron roofing, and all other building material composing the sugar house at Magnolia plantation, in the parish of Plaquemine, La., also the two-story and attic building used as a boarding house, with kitchen, cisterns and oven houses.

"Of the buildings connected with the sugar house I explicitly reserve the boiler shed and brick chimney connected with it.

"Of course, I reserve all tanks, water pipes, tower tank, cane disintegrator, and all other machinery and agricultural implements of every kind and description, whether located in the sugar house or outside it.

"It is agreed further that the purchaser will furnish his own labor and shall not employ any of the labor on or in the neighborhood of the plantation without the consent of the owner or lessee having possession of the property at the time of the demolishment of the buildings.

"It is further agreed that Mr. Geo. B. Jurgens, Jr., or his associates, or laborers, in the demolishing of the above-mentioned buildings, shall have full egress and ingress to the plantation grounds, railroad switch, also, free access to the river, so that nothing will obstruct the work of demolishing the above-mentioned buildings, and the removal and loading of material from the property either by railroad or by barge or otherwise.

"It is also agreed that Mr. Geo. B. Jurgens, Jr., or his associates, shall have the full use of a small house, known as the overseer's house, for the housing and feeding of his laborers during the full time of this agreement.

"All the building material, as far as Mr. Geo. B. Jurgens, Jr., or his associates, see fit to remove from the above-mentioned buildings, must be removed within six months after the date of this contract.

"It is further agreed that Mr. Geo. B. Jurgens, Jr., or his associates, or laborers, will not be molested nor retarded in the demolishing of the above-mentioned buildings, and the removal of the bricks, timber, lumber, slate, iron roofing, or other building material purchased by him under this contract, by any party whatever, or by any legal proceedings whatever.

"The consideration of this sale is fixed at $3,-000 to be paid, as follows: $1,000 on signing this contract, $1,000 on February 15, 1921, and $1,000 on March 15, 1921."

The contract was prepared and written by the defendant himself. Jurgens, testifying in the case, said that he understood, when he signed the contract, that the seventh clause, requiring that all material that he saw fit "to remove from the above-mentioned buildings" had to be removed within six months, meant that the material had to be removed "from the above-mentioned buildings," but not necessarily from the plantation, within the six months. He intended to ship the material, of course, as fast as he could do so conveniently. That which could not be shipped immediately, while the building was being demolished, had to be stacked beside the railroad switch that extended from the main line to the sugar house. That was the only method by which the material could be shipped. Some of it was shipped within the six months after the signing of the contract. There was some delay on the part of the railroad company in the furnishing of cars, but the principal reason, if not the only reason, why all of the material was not shipped within the six months was that Jurgens had not enough storage space in New Orleans, where he was engaged in the business of buying and selling secondhand building material. His failure to ship all of the material within the six months might be excusable, even if the contract plainly required him to remove the material from the plantation within the six months, on the ground that he believed—and might well have believed—that the piling of the material beside the railroad track for shipment, upon or near what was supposed to be the railroad right of way, was, substantially speaking, a removal of the material from the plantation. The plantation is two miles wide and forty arpents deep. The railroad switch, or Y, where the material was piled, runs about midway between the side lines of the plantation. It

was disclosed on the trial of the case that the railroad company did not have a deed for a right of way for the switch track where the material was piled. But that is not important to the question whether Jurgens was in good faith in the matter of removing the material within the six months stipulated in the contract. It is not contended that the piling of the material where it was piled caused any inconvenience whatever to the defendant.

What we have said with regard to Jurgens' piling the material beside the railroad track, and not shipping it all within the six months, pertains only to the equities of the case, and is not important, if his interpretation of the contract, as prepared and written by the defendant, was a reasonable interpretation, and if therefore Jurgens needs no further excuse for his leaving a part of the material on the plantation longer than six months.

[1] Our opinion is that Jurgens' interpretation of the seventh paragraph of the contract is a very reasonable interpretation for a person to give it who did not write the contract. We have no doubt of the good faith of the defendant when he says that he intended to sell only such material as Jurgens saw fit to remove from the plantation within the six months; but the contract does not read that way. It begins with the declaration that the defendant sold, as it stood that day, all of the building material composing the sugar house and boarding house. The clause requiring that such material as Jurgens saw fit to remove "from the above-mentioned buildings" had to be removed within six months after the date of the contract might well have meant that the material had to be removed from the building, though not necessarily from the plantation, within the six months. It is true that, in other clauses of the contract, the demolishing of the building is referred to separately and apart from the removal of the materials from the plantation; and, in those clauses, the word "removal" means removal from the plantation. But it is not so in the declaration in the seventh paragraph, that the building material that Jurgens saw fit "to remove from the above-mentioned buildings" had to be removed within six months. The word "remove" there meant remove from the buildings; and so the word "removed" meant removed from the buildings.

It is not certain, to say the least of it, that the seventh paragraph of this contract meant that the material had to be removed, not only from the sugar house, but from the plantation within the six months, or that whatever material remained on the plantation after that time, even though removed from the sugar house and piled beside the railroad track for shipment, would belong to the defendant. All that we can say for the defendant's contention in that respect is that the contract is perhaps ambiguous. With that regard the case is governed by three very relevant articles of the Civil Code. Under the head, "Of the Interpretation of Agreements," the pertinent articles are 1957 and 1958, viz.:

"Art. 1957. In a doubtful case the agreement is interpreted against him who has contracted the obligation.

"Art. 1958. But if the doubt of obscurity arise for the want of necessary explanation which one of the parties ought to have given, or from any other negligence or fault of his, the construction most favorable to the other party shall be adopted, whether he be obligor or obligee."

The doubt or obscurity about the meaning of this contract, as to whether the defendant sold only such material as the plaintiff saw fit to remove from the plantation within six months, arose from the failure of the defendant, who prepared and wrote the contract, to make his meaning plain.

Article 2474 of the Civil Code, under the head, "Of the Obligations of the Seller," in a contract of sale, is even more to the point, viz.:

"Art. 2474. The seller is bound to explain himself clearly respecting the extent of his obligations; any obscure or ambiguous clause is construed against him."

In the case of Godchaux v. Iberia-Vermilion Railroad Co., 60 So. 1027, 132 La. 77, where Mrs. Godchaux had sold to the railroad company a tract of land to be used only for railroad purposes, and, after her death, her heir at law sued to annul the contract because the railroad company rented a part of the land to one who used it partly for his private business, this court said:

"As the limitation on the uses was in favor of the vendor, any doubt or obscurity arising from the want of necessary explanation of the terms employed should be construed in favor of the purchaser."

In that case it was held that the stipulation in the contract, limiting the use of the land to railroad purposes, was not a resolutory condition, or one which, if violated by the buyer, would give the seller a right to annul the contract, and that the only remedy of the seller in case of a breach of such a stipulation was by injunction or suit for damages. And so, in this case, we do not say that, if the parties to the contract intended that all of the material that Jurgens saw fit to remove from the buildings, and set apart as his, should be shipped from the plantation within six months, the penalty or legal consequence of Jurgens' failure in that respect would be that the ownership of the material would revert to the seller. That, in fact, is not the defendant's theory of the case. His contention is that what he sold to Jurgens was not the material itself, but only the right to take and remove such material as he saw fit to remove from the plantation within six months. That is not the language of the contract.

160 La.—16

[2] It is argued on behalf of the defendant that the fact that Jurgens endeavored to remove the material from the plantation within six months after the signing of the contract shows that he construed his obligation to be what the defendant now contends it was. But Jurgens' conduct in that respect is explained in his testimony and in that of the man whom he had employed to superintend the demolishing of the buildings. The latter complained to Jurgens several times during the progress of the work that he was not being furnished the implements and facilities to do the work expeditiously; and he suggested to Jurgens that it might be contended that the material had to be shipped from the plantation within six months after the date of the contract. Jurgens insisted that the contract could not be so construed, and the superintendent agreed that it *should* not be so construed. Very wisely, though, they endeavored to avoid this unfortunate dispute about the matter.

Our conclusion is that the judgment appealed from ought to be reversed. The evidence in support of Jurgens' claim for damages is not sufficient, or definite enough, to sustain a decree in his favor. That part of his suit should be dismissed as of nonsuit.

The judgment appealed from is annulled, and it is ordered, adjudged and decreed that the plaintiff, George B. Jurgens, is the owner of the building material described in his petition, and is entitled to a reasonable time in which to remove the material from the defendant's plantation, reserving to the latter the right to have the time fixed by judicial decree if he and the plaintiff do not agree upon the time. Plaintiff's claim for damages is dismissed as of nonsuit; and defendant's reconventional demand is rejected.

The costs of this suit are to be borne by defendant.