ALEX F. DREYFUS CO., INC., v. BREEN

(February 17, 1930.  Opinion and Decree.)
(March 10, 1930.  Rehearing Refused.)
(April 1, 1930.  Writ of Certiorari and Review Granted by Supreme Court.)
·(July 2, 1930.  Opinion and Decree Reversed in Supreme Court.)

. Alfred D. Danziger, of New Orleans, attorney for plaintiff, appellee.

David Sessler, of New Orleans, (Charles J. Rivet, of counsel), attorney for defendant, appellant.

WESTERFIELD, J. . The plaintiff firm is engaged in business as a real estate agent. It brings this suit against the defendant for

a commission in the sum of $1,200 and attorneys' fees, alleging that on March 28, 1926, defendant entered into a written contract, employing plaintiff as an exclusive agent for a period of 30 days to sell or exchange the property of defendant No. 1037 Broadway street, for the sum of $32,000 cash, or for any other price agreed upon, and to pay a commission of 4 per cent on the price of the sale made during the life of the contract, or the gross amount of any agreement made within 45 days after the expiration of the term of the contract with any one to whom the property had been quoted during the 30-day term of the contract; that Mrs. Breen, the defendant, on April 30, 1926, within 45 days after the expiration of the contract, accepted an offer of one Hochfelder with whom plaintiff's salesman had been in negotiation during the term of the contract, to exchange the property for certain real estate owned by Hochfelder on terms mutually agreeable, and involving a valuation of defendant's property on a basis of $30,000.

Answering plaintiff's petition, Mrs. Breen admitted the execution of the contract set up in plaintiff's petition, and also admitted the execution of an agreement to exchange her property for the property of Mr. Hochfelder as alleged. Further answering, she averred that her signature to her contract with plaintiff had been obtained by fraud and misrepresentation, and, in the alternative, averred that the contract between plaintiff and herself expired within 30 days, or on April 27, 1926, several days prior to the agreement she entered into with Hochfelder. She denied all liability in the premises.

There was judgment below in favor of plaintiff, and defendant has appealed.

The contract sued on is a printed form, with certain parts interlined with ink in handwriting. It reads as follows:

"Standard Exclusive Agency Contract
"New Orleans Real Estate Agents Association

"*March 28th 1926*

"Alex F. Dreyfus Company, Inc. (Agent)
"Dear Sir:—

"In consideration of your efforts to find a buyer for the property *1037 Broadway Cor. Zimple, ground measuring 42x120 in square of Freret & Audubon,* I employ you or your successors, exclusively, to sell same for *$32,000. Thirty-two thousand and 00/100* cash, or on the following terms *as cash,* or for any other price, or terms hereafter agreed upon, and I agree to pay you or your successors, a commission at the regular rate of 4%, as fixed by the New Orleans Real Estate Agents' Association, on the gross amount of any agreement to sell or exchange bearing on said property (minimum commission to be $———) made during the existence of this contract, or on the gross amount of any such agreement made within forty-five days after the expiration or termination of this contract with anyone to whom said property has been quoted, during the term of this contract.

"I give you exclusive authority, to accept a non-interest bearing deposit of ten per cent of the sale price, when satisfactory offer to purchase said property is made, and to place said deposit in any bank you may select, without responsibility on your part in case of failure or suspension of said bank pending settlement with me, out of which deposit you may deduct your commission as above. In case of employment of counsel to enforce this contract, I will pay twenty-five per cent additional as attorney's fees, also all costs.

"As you are to act upon the fact of this employment and contract, it is to remain in full force and effect for a period of *30 days.*

"I agree to refer all applicants to you, and not to interfere in the sale of said property, during the term of this contract.

"Owners' signature          *Anna Breen*
"Address          *1206 St. Charles Ave.*

"Listed By R. C. F.
"Expiration Date *April 27, 1926.*
"I accept the above employment.

"Agent's Signature *Alex Dreyfus Co. Inc.*
"Reg. No.        By Alex Dreyfus, Pres."
(Handwritten provisions italicized.)

Pretermitting any discussion of the question of fraud, we will first notice defendant's contention to the effect that this contract evidenced only an intention to confer a mandate upon plaintiff for a period of 30 days, authorizing it to sell her property for $32,000 cash. It is argued that, in contracts partially printed and partially written by hand, the handwritten portions, when in conflict with the printed provisions, must prevail. Hagan vs. Scottish Union & National Insurance Company, 186 U. S. 423, 22 S. Ct. 862, 864, 46 L. Ed. 1229. Therefore, it is said that the words "all cash" following the printed word "cash" and the words and figures in ink "thirty days (30)," emphasize the intention of the parties to create a contract of agency whereby plaintiff was exclusively authorized for 30 days only to sell defendant's property for cash and not otherwise. These provisions in ink are said to be in conflict with the printed words "sell or exchange" and with the 45-day clause which also appears in print.

The term of the contract may be said to consist of two periods, one of 30 days and one of 45 days. It is not pretended that a cash buyer was obtained or that an exchange was effected during the 30-day period; hence we are not concerned with the alleged inconsistency of any provision of the contract relating to this feature of it.

As to the 45-day period defendant's liability is made to rest upon her contracting with a prospect with whom plaintiff had been negotiating during the 30-day period. The only conflict that is claimed is an inconsistency with the ink-written term of 30 days, which, it is claimed, terminates all contractual relation between the parties.

But as to this we believe the reasonable interpretation to be that the 30-day period was allowed plaintiff to consummate his efforts to dispose of the property, and the 45-day period was intended only to prevent the defendant from availing herself of an opportunity which plaintiff had discovered but not developed without compensating the plaintiff for his efforts. We find no inconsistency in these provisions.

Viewing the contract as a whole, and giving due effect to all of its provisions, it is plain that defendant's liability must depend upon the effect which must be given her action in agreeing with Hochfelder to exchange the property within the 45-day period. If we had been called upon to decide this issue a year or so ago, our conclusion might have been different, for in a similar case involving a similar contract we held that an agent was entitled to his commission, but, when our opinion was reviewed by the Supreme Court, it was pronounced erroneous. The case to which we refer is that of Clesi vs. Cooney, 164 La. 658, 114 So. 584, 585. In that case the plaintiff, Clesi, a real estate agent, sued for a commission alleging that the defendant, Cooney, had given him an exclusive contract for 30 days to sell certain property owned by Cooney for $60,000 or any other amount agreed upon—terms, all cash; that in said contract it was stipulated that, if plaintiff found a buyer, or proved instrumental in finding one, or if the property was sold by Cooney or any other person during the term of the contract, a commission of 3 per cent on the purchase price was to be paid plaintiff, "the amount being earned and payable when agreement to purchase is signed." It was further alleged that during the term of the contract Cooney had been informed that plaintiff could sell the property for $55,500, but that Cooney declined to accept that amount;

that, within 9 days after the signing of the exclusive contract of agency, the defendant, Cooney, entered into a contract agreeing to sell the property to a party by the name of Ferrara for the sum of $54,000. Cooney answered, admitting the contract, and also admitting that during its term he had agreed to sell the property to Ferrara for $54,000, of which $20,000 was to be paid in cash, and the balance on terms, and justified his refusal to pay the commission on the ground that his agreement with Ferrara did not interfere with the execution of plaintiff's contract to sell the property for $60,000 cash, which the plaintiff had failed to do.

The plaintiff filed a rule for judgment on the face of the pleadings which, after hearing, was made absolute, and judgment rendered in plaintiff's favor as prayed for, which, on appeal to this court, was affirmed. Clesi vs. Cooney, 7 La. App. 182.

In reversing the district court and this court, the Supreme Court held that the mere fact that Cooney had agreed to sell the property during the life of his contract with Clesi did not render him liable for a commission, because his liability depended upon whether such action interfered with the performance of the contract, whereby Clesi for 30 days was exclusively authorized to sell the property for $60,000 cash.

With the light of the Clesi case before us, it must be held that the liability of the defendant in this case can only arise if it should appear that the action of the defendant was prejudicial to whatever efforts plaintiff may have made to execute his contract. In that aspect it must be conceded that, although Mrs. Breen contracted with Hochfelder, to whom an agent of plaintiff had spoken concerning Mrs. Breen's property, she did not contract to sell or exchange for cash nor for $32,000,

but for $30,000, a fact which plaintiff recognized, for commission is claimed upon $30,000 and not upon $32,000.

It is true, as contended by counsel, that in the Cooney case, unlike the present case, the contract considered did not have a 45-day clause, nor was there any provision obligating the owner to refer all applicants to the agent, but this distinction is unimportant, because in the Cooney case the commission was due when a contract for purchase was entered into, but was disallowed because the provisions of the contract entered into by the owner were different from those under which the agent was authorized to sell, and in this case defendant agreed to pay a commission "upon the gross amount of any agreement to sell or exchange made within 45 days * * * with any one to whom said property had been quoted," but the commission must be disallowed because the contract negotiated by the defendant here was different from that which the agent had undertaken to consummate. A reading of the opinion in the Cooney case plainly indicates that an agreement to sell the property without the interposition of the agent during the term of the exclusive contract of agency was not sufficient to render the owner liable for the commission, if the contract independently negotiated did not interfere with the agent in the performance of his agreement, and was upon terms and conditions different from those under which he had undertaken to dispose of the property. Our understanding of defendant's obligation under the 45-day clause, in view of the Cooney case, is that she agreed to pay a commission if she made an agreement with a prospect of plaintiff during this period upon the terms which she authorized plaintiff to dispose of her property, and not otherwise.

We can find no distinction in principle between the case at bar and the Cooney case; consequently, whatever opinion we may have held in the past must be subordinated to the view expressed by the Supreme Court.

For the reasons assigned, the judgment appealed from is annulled, avoided, and reversed, and it is now ordered that there be judgment in defendant's favor, dismissing plaintiff's demand.

JANVIER, J. (dissenting). Although my associates came to the conclusion that the provision written into the contract that it should be limited to 30 days was not necessarily inconsistent with the provision that the agent would be entitled to a commission on any deal made, during the second, or 45-day period, with any person with whom, during the 30-day period, the agent had been in negotiation they did not discuss the question of whether the written words "all cash" were necessarily inconsistent with the further stipulation for a commission "on the gross amount of any agreement to sell or exchange bearing on the property."

I cannot understand their statement that "it is not pretended that a cash buyer was obtained, or that an exchange was effected during the thirty-day period, hence we are not concerned with the alleged inconsistency of any provision of the contract relating to this feature of it." The reason I cannot understand the above language is that the entire case is based on the charge that the owner, during the second, or 45-day period, made a trade on an exchange basis with a person with whom the agent, during the first, or 30-day period, had been in negotiation looking to an exchange of the same properties which were concerned in the trade which the owner herself later made.

I think that it is absolutely essential to a decision of this case that a conclusion be reached as to whether or not the words "all cash" are necessarily inconsistent with the provision that a commission will be earned on an exchange satisfactorily negotiated by the agent.

I readily concede that, where a document contains both printed and written clauses, and where the written ones are necessarily inconsistent with those printed, the written ones must be accepted as expressing the true intention of the parties. Hagan vs. Scottish Union, etc., 186 U. S. 423, 22 S. Ct. 862, 864, 46 L. Ed. 1229. But I assume, on the other hand, that it will be as readily conceded that, if such a contract is susceptible of two interpretations, one of which will give effect to both sets of clauses, and the other of which requires the elimination of the printed clauses, that interpretation which gives effect to both sets, or, in other words, to the whole document, will be accepted, instead of the other, which requires the elimination of the printed portions as being inconsistent with those that are written.

"A construction which entirely neutralizes one provision of a written instrument should not be adopted if the contract is susceptible of another, which gives effect to all of the provisions." Glassell vs. Richardson Oil Company, 150 La. 999, 91 So. 431, 434. See, also, Board of Trustees vs. Campbell, 48 La. Ann. 1543, 21 So. 184; Lozes vs. Segura Sugar Co., 52 La. Ann. 1844, 28 So. 249; Whited & Wheless vs. Calhoun, 122 La. 100, 47 So. 415.

If, then, the contract in question may, with reason, be interpreted so as to give effect to all the provisions, both the written and the printed, then that interpretation should be accepted.

Let us examine the clauses which are said to be inconsistent. In the blank suc-

ceeding the printed words "or on the following terms" are written the words "all cash." Following this we find a printed provision containing, among others, the stipulation for a commission "on the gross amount of any agreement to sell or exchange bearing on the property."

It is said that the written words "all cash" are necessarily inconsistent with the stipulation permitting the agent to negotiate for an exchange. I do not agree with this view, and on this point my associates express no opinion. The words "all cash" can be and are often used to mean "not on terms," "not on partial credit." An exchange is equivalent to cash up to the value of the lower priced of the two properties concerned, and, if the balance is paid in cash, the whole transaction may be said to be a cash one, in the sense that none of the purchase price is paid in mortgage notes or on other credit. If A's house is worth $5,000 and B's is worth $10,000, and an exchange is made in which A gives B $5,000 in cash, it may be said that the transaction was made for cash, in the sense that no credit was involved. Therefore, since those provisions of the contract are not necessarily inconsistent, I believe that the document should be construed as having given to the agent authority to negotiate either for the sale or for the exchange of the property, provided only that the negotiation should not contemplate the granting of credit to the purchaser.

It might be important to note on this point that, in the exchange which was finally made, the present defendant, the owner of the property in question, took over a much more valuable piece of property, and therefore the question of her accepting a mortgage or granting credit was in no way involved.

It is also said that the written words "thirty days" in the blank following the printed words "as you are to act upon the faith of this employment and contract, it is to remain in full force and effect for a period of ———" are necessarily repugnant to the stipulation that a commission will be paid to the agent if a deal is closed either during the 30-day period, or "within 45 days after the expiration or termination of this contract, with anyone to whom said property has been quoted, during the term of this contract."

Here I again cannot agree with defendant, and here I am in accord with the views of my associates. The contract itself exists for 30 days, and, after that term, the agent is no longer authorized to initiate negotiations, but the said period of 45 days is given him so that he may close a trade already in the making, and so that the owner, just prior to the end of the first 30-day period, knowing of an interested prospect, may not delay until after the expiration of that period, and thus avoid paying the commission of the agent. The fact is, as I understood the argument of counsel for the defendant, that he does not seriously contend that this 45-day period, granted for the closing of a contract, should be written out of the document, but bases his contention almost entirely on the argument that the agent had no authority, at any time, to negotiate for an exchange, and that therefore, even if he did initiate such negotiations, the carrying over into the second, or 45-day, period of these negotiations, can be of no benefit to the agent.

Since full effect may be given to all the stipulations of the contract, it follows that under its terms the agent was authorized, during its existence, to negotiate for an exchange of the owner's property. It is not denied that, during the 30-day period, the

agent did so negotiate with Mr. Hochfelder, and it is admitted that, within a day or so after the termination of the first, or 30-day, period, the owner closed negotiations with Hochfelder for an exchange of the property.

In my opinion, the owner (defendant here) owes the commission for two reasons: First, because within the second, or 45-day, period, she closed a contract of exchange with a person with whom the agent had been in negotiation during the first, or 30-day, period; and, second, because she violated the provision of that portion of the contract under which she agreed that she would refer all applicants to the agent.

In regard to this second reason, it may be well to mention that, when she spoke to Hochfelder's agent the first time, it was prior to the expiration of the 30-day period, and she did not, as she should have done, refer the matter to her agent, but, on the contrary, told Hochfelder's agent to wait a few days, so that her other contract might expire, after which she would trade direct. She did not wait, however, until after the second, or 45-day, period, but closed her trade only a day or so after the 30-day period had ended.

My associates are of the opinion that Clesi vs. Cooney, supra, is controlling here. I believe that I see three fundamental differences between the facts of the Clesi case and those presented in this case:

First. In the Clesi case the agent seems to have been told, in effect: "I have made a contract to sell my property direct after your contract has expired, provided you have not found a buyer in the meantime." The Supreme Court said with reference to this second contract:

"* * * The agreement with Ferrara did not in any way interfere with the plaintiff's authority to sell the property for $60,000 during the terms of his contract, and that the plaintiff was informed that the agreement which defendant had made with Ferrara did not affect plaintiff's right or authority to sell the property during the term of his contract, and thereby earn his commission."

Second. The contract in the Clesi case did not contain a stipulation to refer all prospects or applicants to the agent.

Third. In the Clesi case, according to the above language of the Supreme Court, the contract which the owner made direct was made conditionally upon the expiration of the authority of the agent, whereas here no conditions were involved, and the contract to sell was signed prior to the expiration of the final effective date of the contract with the agent.

If the contract here did not contain the stipulation providing for the referring of all applicants to the agent, the owner could have brought herself within the protection of the doctrine of the Clesi case by telling the prospect: "Wait until after the second, or the forty-five day period has expired and I will trade with you direct," and by advising her agent: "Mr. Hochfelder is interested in the property. See if you can close a trade with him." Under her contract, she was obligated to do both of these things: Advise her agent of the applicants, and wait until the final expiration of the second period before trading direct with any one with whom the agent had, during the 30-day period, been in negotiation. She did neither, and, under her contract, she is liable for the commission.

I cannot agree with my associates that, where a contract authorizes an agent to sell or negotiate for a trade of a property at a particular price, or at such other price as may be agreed upon, the owner can avoid paying the commission because the price named in the contract with the agent is not the price for which the owner finally closes the trade initiated by the agent

and I do not so interpret the language of the Supreme Court in the Clesi case.

It is interesting to note that, as a result of trading direct with Hochfelder, the owner (defendant here) not only avoided payment of the commission, but, in addition, seems to have been given by the other agent a wedding present of $150. Nor can I overlook the fact that this defendant was not an inexperienced trader in real estate, but bore an enviable reputation as a most expert trader, and must have been thoroughly familiar with the effect of the clauses in her contract.

On the question of fraud, I think the evidence falls far short of being sufficient to sustain the charges made.

The judgment of the court below was based on the verdict of a jury, and, as I think it should be affirmed, I respectfully dissent.