## UNION INDEMNITY CO. v. F. D. HARVEY & CO.*

### No. 4457.

Court of Appeal of Louisiana. Second Circuit.

June 5, 1933.

H. W. Ayres, of Jonesboro, for appellant.

Boyd K. Watson, of Marion, for appellee.

TALIAFERRO, Judge.

Plaintiff provided defendant public liability and workmen's compensation bonds while engaged in constructing in whole or part sewerage systems for Port Allen and Lafay-

ette, La. This suit was brought to recover $579.55, alleged balance due for earned premiums on the four bonds. Defendant denies any liability to plaintiff whatever, and alleges that the premiums paid plaintiff exceed the amount thereof actually earned by $167.48, and sues for this amount in reconvention.

There were two trials of the case below. Plaintiff was given judgment for the full amount sued for at first trial. The second judgment, the one appealed from by defendant, is for $145.51. Answering the appeal, plaintiff asks for increase of the judgment to the full amount sued for.

Plaintiff has not filed brief in this court. Its brief in the district court is in the record, and from this we believe we are able to appreciate its theory of the case, but feel certain our labors would have been much less had plaintiff fully briefed its side of the case in this court.

■ Two issues are presented: (1) Is defendant due a premium under the bonds on the amount expended for tunneling other than at street intersections; and (2) whether or not it has been doubly charged premiums on the amounts paid out to truck drivers on the two jobs. The first question must be solved by a construction of the terms and provisions of the policy contracts, while the second depends upon interpretation of accounts as explained and amplified by the testimony.

The premiums under these policies were not definitely fixed therein. These were dependent upon the total amount expended on the two jobs and the classification or character of the labor for which the expenditures were made. Under the "declarations" in the workmen's compensation policies there is a schedule of "Classification of operations" and rate basis for calculating the amount of premium due under each classification. So far as pertinent here, these are:

1. Sewer construction...all operations excluding tunneling except at street intersections .............. 5.422
2. Drivers and their helpers, etc. .... 1.827

The rate for the public liability bonds was as follows:

Lafayette ........................... .77
Port Allen ......................... .924

The rates, expressed in above figures, are based upon each expenditure of $100. For illustration $1.827 would be due as premium on each $100 expended for truck drivers, and 77 cents premium would be due on each $100 expended at Lafayette, under the public liability bond. It was the duty of the insured, under the express terms of the policy, to render monthly reports to the insurer containing the gross pay rolls and the classification of the labor covered thereby. On these reports the amount of premium due, from time to time, would be calculated. However, it appears that these reports were not made regularly; in fact, Mr. F. D. Harvey, defendant's president, testified that they always waited for the plaintiff's auditor to call on them for the information the reports would contain.

It was necessary under each contract to do considerable tunnel work other than at street intersections, such as under railroads and road culverts. At Lafayette this cost $1,240, and, at Port Allen, it cost $2,100. Defendant stoutly contends that this sort of work was, not only not included in the policies, but was expressly excluded therefrom by the typewritten wording in the schedules of "Classification of Operations," as follows:

"Sewer construction...all operations...excluding tunneling except at street intersections."

Plaintiff controverts defendant's position on this score. It has charged defendant with premium on the amounts paid for this tunneling at the same rate it has charged for the tunneling at street crossings. Plaintiff relies upon the provisions of condition A of the workmen's compensation policies, which, with minor change in phraseology, appears in the public liability policies, the pertinent parts of which are: "The premium is based upon the entire remuneration earned, during the Policy period, by all employees of this Employer engaged in the business operations described in said Declarations together with all operations necessary, incident or appurtenant thereto, or connected therewith whether conducted at such work places or elsewhere in connection therewith or in relations thereto; * * * If any operations as above defined are undertaken by this Employer but are not described or rated in said Declarations, this Employer agrees to pay the premium thereon, at the time of the final adjustment of the premium in accordance with Condition C hereof, at the rates, and in compliance with the rules, of the Manual of Rates in use by the Company upon the date of issue of this Policy. At the end of the Policy Period the actual amount of the remuneration earned by employees during such period shall be exhibited to the Company, as provided in Condition C hereof, and the earned premium adjusted in accordance therewith at the rates and under the conditions herein specified."

It is conceded by plaintiff that tunneling, except at street intersections, is excluded from the schedule of classifications, referred to above, in so far as the rate of 5.422 is concerned, but argues that same was not excluded from the policy for the purposes of determining the amount of premium due under the policies. It is also conceded that no rate for this sort of work is fixed in the policies. However, defendant has been charg-

ed the same rate as is charged for general sewerage construction work and tunneling at street crossings. It is shown by testimony that tunneling, other than at street intersections, carries a higher rate than 5.422. If plaintiff's position is correct, then defendant has no just ground of complaint since it has been charged less than could have been charged for the railroad tunneling. The evidence does not disclose the correct rate for this class of work.

Condition A, quoted from supra, lays down the rule for ascertaining the amount of premiums due under the various contracts · of insurance, and expressly says that said premiums shall be based upon the entire remuneration earned by all employees engaged in the insured's operations described in the "Declarations," and that, if any operations are "not described or rated" in said declarations, the employer would be due to pay premium thereon "at the rates, and in compliance with the rules, of the Manual of Rates in use by the Company," etc.

It is clear, therefore, if any class of work had been inadvertently omitted from the schedules, or if the rate for any particular classification had not been inserted in the schedule, that the provisions of condition A would have applied, and all that would be needed to complete the schedules or cure the omissions would be a resort to the Manual of Rates referred to. But, in view of the plain language of all of the schedules, can it be said that "tunneling, other than at street intersections," was inadvertently omitted from the contracts, or that, if included under its general provisions, the rate therefor was unintentionally omitted? We do not think so and regret to disagree with our learned brother of the lower court on this point.

The policies for the Lafayette contract were written many months before those for the Port Allen work were written. The same language is used in both sets of policies. It is inconceivable that, if there were error in the first instance, it would have been precisely repeated in the second; especially does this seem impossible of happening when the papers were prepared by agents of plaintiff specially skilled in this line of work. If no reference in the schedule had been made to tunneling, then, under appropriate allegations supported by proof, the permissible rate for that class of work would have been recoverable under the provisions of condition A, but the fact that tunneling, except at street intersections, is expressly mentioned and excluded, negatives beyond question that there was any inadvertent omission of classification or rate so far as this sort of work ·was concerned.

Defendant is supported in its interpretation of the meaning, intent, and effect of the insurance policies in question by three well-recognized legal principles as regards the interpretation of written contracts:

1. "Agreements legally entered into have the effect of laws on those who have formed them." Civ. Code, art. 1901.

"When a law is clear and free from all ambiguity, the letter of it is not to be disregarded, under the pretext of pursuing its spirit." Civ. Code, art. 13. Montgomery v. Continental Casualty Company, 131 La. 475, 59 So. 907.

2. When there is conflict between the printed and typewritten portions of a contract, the typewritten portions control, since they were written last and obviously reflect the true intent of the parties on the subject-matter involved in the conflict. Brooke v. Insurance Company, 4 Mart. (N. S.) 640.

The rule is expressed in 6 R. C. L. 847, as follows: "It is a well-settled rule of law that where part of a contract is written and part is printed, and the written and printed parts are apparently inconsistent or there is reasonable doubt as to the sense and meaning of the whole, the words in writing will control the construction of the contract. The reason why greater effect is given to the written than to the printed part of a contract if they are inconsistent is that the written words are the immediate language and terms selected by the parties themselves for the expression of their meaning, while the printed form is intended for general use without reference to particular objects and aims."

And again, in vol. 14, R. C. L. p. 933, verbo "Insurance," the rule is stated to be: "It is the rule with reference to insurance policies, as well as other contracts, that if there is any conflict between the written and printed portions of the policy, the written portions prevail."

Corpus Juris, vol. 32, p. 1159, states the rule thus: "The rule that a contract of insurance is to be construed, if possible, so as to give effect to all its parts is applicable where part of the policy is printed and part is written or typewritten; but where there is an irreconcilable conflict between the written and printed parts of the policy, the former controls."

3. Ambiguities, if any, in a written contract are construed against the party who prepared the instrument.

Article 1957, Civ. Code: "In a doubtful case the agreement is interpreted against him who has contracted the obligation."

Article 1958, Civ. Code: "But if the doubt or obscurity arise for the want of necessary explanation which one of the parties ought to have given, or from any other negligence or fault of his, the construction most favora-

ble to the other party shall be adopted, whether he be obligor or obligee."

Article 1959, Civ. Code: "However general be the terms in which a contract is couched, it extends only to the things concerning which it appears that the parties intended to contract."

"A written contract should, in case of doubt, be interpreted against the party who has drawn the contract." 6 R. C. L. 854, par. 242; Meyer v. Southwestern Gas & Elec. Co., 16 La. App. 472, 133 So. 504; Godchaux v. Iberia-Ver. R. Co., 132 La. 81, 60 So. 1027, 1028; Jurgens v. Warmoth, 160 La. 475, 107 So. 311; Bernier v. Pac. Mut. Life Ins. Co., 173 La. 1078, 139 So. 629; Ventre v. Lastrapes, Clerk, 9 La. App. 239, 119 So. 292.

The lower court found, after two trials of the case, that the total amount expended on the Lafayette job was $23,014, which includes $2,100 for tunneling and $2,977 paid to truck drivers, and that the total expenditure on the Lafayette contract was $10,897.44, which included $1,240 for tunneling and $2,016 for truck drivers.

We have closely checked over the various accounts and considered the evidence pertinent thereto. We think the amounts arrived at by the trial judge correct.

We do not think there is merit in defendant's complaint that he has been charged twice on amount paid out for truck drivers. $2,977 paid out for this class of work at Port Allen is carried in the pay roll audit account separate from the amounts paid out for construction work proper, and it is established that at Lafayette $2,016 was paid to the truck drivers.

In view of our conclusions on the issues involved herein, the following recast of the accounts between the parties is correct:

Plaintiff cites that part of section 23 of Act No. 20 of 1914, reading: "No policy of insurance against liability under this act shall be made unless such policy shall cover the entire liability of the employer under this act, * * *" in support of the contention that the insurance policy must cover the entire liability of the employer (to the employees), and deduces therefrom that, if the contract of insurance protects all of the employees in their right to compensation, necessarily the total amount paid these employees must be taken as a basis to determine the amount of premiums due under each policy. Plaintiff has overlooked the amendment of 1926 (Act No. 85 of 1926) to the above-quoted portion of section 23 of the original act, which reads: "Provided, that as to the question of the liability as between the employer and the insurer the terms of the insurance contract shall govern."

We are not concerned with the rights of employees under the policies in question. It may be possible, under the law, that certain classes of workmen may be protected under the policy of insurance, when, as a matter of fact, as between the insured and insurer, no premiums may have been due or paid for such protection. As to this we express no definite opinion as the question is not involved in the present suit.

Since this appeal was lodged, plaintiff has been placed in the hands of receivers for liquidation by the civil district court of the parish of Orleans. The receivers, Clay W. Beckner and S. Sanford Levy, on motion of their counsel, were substituted as parties plaintiff in the suit.

For the reasons herein assigned, the judgment appealed from is amended by reducing the amount thereof to $145.46, and, as thus amended, said judgment is affirmed.

**Port Allen Contract**

Total payroll ................................... $23014.00
Less tunneling ............................... 2100.00

$20914.00 @ .924 (Pub. Lia.)....................$193.25
2977.00 @ 1.827 (Truck Drivers).............. 54.39
17937.00 @ 5.422 (Work. Comp.)................. 972.54

Total ...................................... $1220.18

**Lafayette Contract**

Total payroll ...................................$10897.44
Less tunneling ............................... 1240.00

$ 9657.44 @ .77 (Pub. Lia.).................... $ 74.36
2016.00 @ 1.827 (Truck drivers).............. 36.83
7641.44 @ 5.422 (Work. Comp.)................. 414.32

Total ...................................... $ 525.51

Total premiums both contracts........................... $1745.69
The admitted credits made by the defendant against this account are ...................................... 1600.23

Balance due on premiums account..................... $ 145.46