**STAMN SCHEELE, Inc., v. LOEWER et al.**
**No. 1172.**

Court of Appeal of Louisiana. First Circuit.
Oct. 5, 1933.

Bruner & Chambers, of Crowley, for appellant.

Pugh & Buatt, of Crowley, for appellees.

LE BLANC, Judge.

On July 23, 1929, David Loewer and his sister, Mrs. Lena Loewer Casselman, defendants herein, executed their note for the sum of $1,000, payable to the order of Stamn Scheele Manufacturing Company, Limited, on November 15, 1930. This note was one of a series of three notes executed in conformity with a contract of the same date between Stamn Scheele Manufacturing Company and David Loewer for the drilling of a water well on Loewer's property located about two miles east of Mowata in the parish of Acadia, La. Loewer was engaged in the cultivation of a rice crop, and the well was intended to furnish water with which to irrigate his crop.

The note of $1,000 herein referred to was reduced by two payments, one of $8.17 made on April 1, 1930, and the other of $719.37 on January 28, 1931. The makers having refused to make further payments, this suit was instituted against them on March 31, 1931. Suit is brought in the name of Stamn Scheele, Inc., which it is admitted is the successor in name of Stamn Scheele Manufacturing Company, Limited, and is the actual holder and owner of the note sued on.

The defense is that the well which was drilled under the contract failed to produce the minimum quantity of water guaranteed thereunder, and, as that was the consideration for which the note was given, defendants cannot be held liable. Defendants in their answer reconvened for the sum of $125, which they allege is the value of certain gravel hauled away from their premises by the plaintiff without their consent.

The lower court rendered judgment rejecting the plaintiff's demand and also the reconventional demand of the defendants. Plaintiff has appealed. Defendants filed no answer to the appeal asking for consideration of their reconventional demand, and we take it that it is no longer an issue in the case.

The solution of this controversy depends upon the construction that is to be placed on the contract entered into between the plaintiff and the defendant David Loewer on July 23, 1929, and more particularly on the nature of the guaranties therein contained.

Strange enough, there are two separate clauses in the contract with reference to the minimum quantity of water per minute that the well is to produce. In the first part of the contract, it is stipulated that plaintiff agrees to pull purchaser's (defendant's) pump now installed in his old well and reinstall same in the new well, and then guarantees "that the well when completed in accordance with the terms of this contract shall have a minimum producing capacity of not less than two thousand (2000) U. S. Gallons of water per minute when pumped to its capacity, as shown by weir and other approved means of measurement and that said well remains in good pumping condition for the pumping season of 1929 and 1930." The guaranty as quoted herein is all in the printed form of the contract except for the words and figures "two thousand (2000)—1929 and 1930." At the end of the contract, just before the closing clause, appears the following other guaranty, all typewritten therein except the two last words, which are written in ink: "Contractor further guarantees that the said well, when completed and equipped with a pump of suitable capacity set at sufficient depth in the well, will produce not less than 2500 U. S. Gallons of water per minute when pumped to its capacity."

Mr. Loewer used the well to irrigate his crops during the seasons of 1930 and 1931, and it was not until June, 1931, several weeks after this suit was filed, that there was an actual test made of the water production. This test was made by Mr. Loewer and witnessed by several parties. They all agree in saying that the well did not come near producing anything like 2,500 and not even 2,000 gallons of water.

The plaintiff's contention is now that, if that is the test relied on by Mr. Loewer, it was made long after the guaranty under the contract had expired, as it is therein provided following the guaranty that the well would remain in good pumping condition for the seasons of 1929 and 1930. It is further contended that the contract did not provide for such test as was made, but, if any was contemplated, that it was to be made by the plaintiff with a pump equipped by the defendant.

Inasmuch as the second guaranty contained in the contract is general in its terms and is not limited to any particular pumping season, it becomes apparent how necessary it is to determine which of the two guaranties is to control.

Reading the contract as a whole, we are of the opinion that it is the last clause wherein the contractor guaranteed 2,500 gallons of water per minute without reference to any season that governs.

In a paragraph following the first guaranty of water supply is found a clause which

gives to the contractor the right, at any time within one year from the date of settlement, to return to the well to endeavor to increase the pumping capacity of the well to the original amount stipulated. In connection with this provision, it is to be observed that the third payment under the contract represented by the note herein sued upon did not mature until November 1, 1930. That we take to be the date of settlement referred to, and, as the contractor had the right, at any time within a year from that date, to endeavor to increase the capacity of this well that was yet to be drilled, we conclude that the mention of the seasons 1929 and 1930 in the first paragraph of the guaranty clause cannot be considered as being the limit to the obligation plaintiff was under in reference to that part of the contract.

Moreover, there is authority to the effect that, where a contract is in printed form and part of it is written, and the written and printed parts are inconsistent, the words that are in writing will control the construction of the contract. 6 R. C. L. p. 847, par. 237; 13 Corpus Juris, p. 536, § 498. The reason why greater effect is given to the written than to the printed part is stated in Ruling Case Law to be "that the written words are the immediate language and terms selected by the parties themselves for the expression of their meaning, while the printed form is intended for general use without reference to particular objects and aims." We believe that the same rule of construction applies where parts of the contract are typewritten instead of being written by hand. In other words, the typewritten parts express the immediate language and terms of the parties themselves and should govern over the printed parts. In this contract it is true that there are some typewritten words in the printed clause relating to the guaranty, but we do not believe that they should control over an entire typewritten clause which expresses an entirely different meaning, and which in our opinion is to be taken as the true and real meaning of the parties.

■ The contract does not stipulate the exact manner in which, nor by whom, a test of the well shall be made. As we understand the plaintiff's contention, it is that, if they were the ones to make the test, it was incumbent on Loewer to equip the well with a pump of suitable capacity set at sufficient depth to enable them to make such tests.

It is shown by Loewer that, after the well was completed, Mr. Flower, plaintiff's manager, and the only person he had any dealings with, came to try it out, but the motor which was used was not in good condition enough to make an actual test, and he advised that they wait until the engine which was to pull the well had been installed. He says that no one connected with the plaintiff ever afterwards interested himself in the well, although he complained from the very beginning that it was not producing the quantity of water it should. Mr. Flower on one occasion told him to go ahead and use the well, and that, if anything was wrong and it did not deliver a sufficient amount of water, the company would stand behind him and make it good. He says that he could not afford to lose his crop, so he did use the well as Flower had advised him to do. All of this is not contradicted. Mr. Flower, who, it appears, was available as a witness, did not take the stand to deny any of it. The fact is that plaintiff did not place any witnesses at all on the stand, having elected to submit its case on the contract and note sued on.

It seems to be only when satisfied that plaintiff did not intend to conduct their own test of the well that Mr. Loewer proceeded to make a test himself. True it is that the suit on the note was then already filed, but what better proof could there be then that plaintiff was not going to make any test? Even then, before beginning the test he made, Loewer notified them and invited them to have some one present, but his invitation was ignored.

Article 1956, R. C. C., on the subject of the interpretation of agreements, provides that: "When the intent of the parties is doubtful, the construction put upon it, by the manner in which it has been executed by both, or by one with the express or implied assent of the other, furnishes a rule for its interpretation."

From the syllabus in the case of Wilcoxen v. Bowles, 1 La. Ann. 230, we quote: "Any doubt as to the interpretation of a contract, may be removed by the construction put upon it by the acts of the parties themselves."

So in this case, if any doubt existed as to which of the parties had to conduct the test of the well, the act of Flower, plaintiff's manager, in having attempted one such test, with their own equipment and his assurances to Loewer that he could go ahead and use the well, and that the company would make good any insufficiency of water, forces us, under the rule of interpretation cited, to resolve that doubt in favor of the defendants and to hold that the obligation to make a final test of the well rested on the plaintiff.

■■ The filing of the suit seemed to be sufficient indication that they did not intend to make any such test, and Loewer was then justified in making the test which he conducted himself. If the plaintiff did not care to participate in that test after having been invited to be present, they should be held bound by the result. The test made by Loewer was witnessed by several experienced rice farmers. It seems to have been made according to accepted standards, and, as far as the testimony shows, left no doubt that

the well did not produce near the minimum quantity of water per minute under either guaranty contained in the contract.

The consideration for the notes given with the contract was that the well would produce a certain gallonage of water per minute, and, it having failed to come up to the guaranteed capacity, the consideration for the notes, or for the balance of the note sued on, failed, and plaintiff's suit was therefore properly dismissed and its demands rejected in the lower court.

Judgment affirmed.