57 So.2d 591

DEAN et al. v. PISCIOTTA et al.

No. 40235.

Feb. 18, 1952.

Harry R. Cabral, William M. Campbell, Jr., New Orleans, William M. Campbell, Jr., Trial Attorney, New Orleans, for plaintiffs-appellants.

Jos. Rosenberg, New Orleans, for defendants-appellees.

McCALEB, Justice.

This suit was brought on a contract of lease to compel the lessors to make certain structural alterations in the premises in accordance with requirements of the State Fire Marshal and the Department of Electrical and Mechanical Inspection of the City of New Orleans or, in the alternative to permit plaintiffs, the lessees, to deduct the costs thereof from the current rent.

The undisputed facts reveal that defendants, the owners and former operators of the Walnut Hotel, 627 St. Charles Street in the City of New Orleans, leased the premises, on April 1st 1946, to plaintiffs for a period of five years for the express purpose of continuing the operation of the hotel and, in furtherance thereof, plaintiffs purchased the furnishings, good will and trade name

for the sum of $22,500. Soon after plaintiffs acquired possession, the State Fire Marshal and the Department of Public Safety of the City of New Orleans, upon inspection, found structural vices and defects in the building and other omissions constituting violations of safety regulations of the city and state. After repeated notices and warnings, the complaints of the state and city agencies were finally remedied during the pendency of this suit and plaintiffs and defendants were able to reach an amicable agreement as to their respective duties and obligations under the lease, save for plaintiffs' claims for expenses incurred in venting a hot water heater, in the sum of $40, and the cost attendant to correcting defective electric wiring, amounting to $380.50.

A trial was thereafter had in the district court on the limited issue as to which party was liable for the cost of the aforementioned items, resulting in a judgment in plaintiffs' favor, as prayed for. On appeal, the decision was reversed by the Court of Appeal and plaintiffs' suit dismissed. See 49 So.2d 869, 871. We granted certiorari.

Plaintiffs maintain that the defects in the premises which brought about the complaints of the city authorities and State Fire Marshal, including the absence of a vent for the hot water heater and the vices in the electric lighting system, were structural in nature and that, therefore, defendants are responsible for their correction as the lease provides that "The upkeep and main-

tenance of the premises are assumed by lessees; however, the lessees are not bound to make any repairs resulting from structural defects * * *".

Defendants, on the other hand, declare that, insofar as the defective electric wiring is concerned, liability for compliance with municipal and state regulations has been specifically assumed by plaintiffs under another provision of the lease, which reads: "In case of the tenant introducing, or now having, electric lighting in the leased premises, he shall comply in every respect at their own expense, with the rules and regulations of what is known as the Louisiana Fire Prevention Bureau, or those of any other similar Association in existence at the time * * *".

And, as to the hot water heater, defendants deny liability on the ground that plaintiffs knew or should have known that it was not vented, having inspected the premises prior to the confection of the lease, and that, consequently, any repair thereto after acceptance was due by them as lessees.

There is no basis whatever for defendants' plea that, since plaintiffs could have observed that the water heater was not vented at the time they leased the premises, the remedying of such a structural defect became their responsibility. The Court of Appeal did not sustain this defense but was of the opinion that, since plaintiffs installed a new water heater as a substitute for the old ones (there were two), they were liable for the cost of venting the new heater as it became their duty to install it in conformity with prescribed regulations by providing an adequate vent.

■■■■ This ruling would have rested on firmer foundation, if plaintiffs had installed the new heater before the Fire Marshal had registered complaint with respect to the old ones. But here it appears that, on October 3rd 1946, over a month prior to the time plaintiffs installed the new hot water heater, the State Fire Marshal notified all interested parties in writing that the existing condition of the premises was in violation of State law in that, among other things, "Hot water heater not vented". Obviously, the defect was structural and defendants were bound to remedy it under the lease contract. This being so, it is difficult to discern why plaintiffs' position should be more onerous, insofar as liability for the defect is concerned, because they elected to substitute a new heater for the old ones, particularly in the absence of proof that the vent for the new heater was more costly than the required vent for the old.

Respecting the question of liability for the electrical rewiring of the premises, the Court of Appeal resolved that it was governed by the provision in the lease which makes the tenant liable for compliance with the rules of the Louisiana Fire Prevention Bureau, when he has introduced electric lighting in the leased premises. In reaching this conclusion, the Court laid emphasis on the words "or now having" which are

contained in the stipulation that "in case of the tenant introducing, or now having, electric lighting in the leased premises * * *" he shall comply with the rules of the Louisiana Fire Prevention Bureau, etc., evidently being of the opinion that the provision covered the case at bar even though the defective wiring existed long before the confection of the lease.

■ We think, however, that a casual reading of the stipulation makes plain its inapplicability to electric lighting and wiring which has not been installed in the premises by the tenant. Indeed, it appears that its language covers only the case of the tenant "introducing" electric lighting or where he has already placed such equipment on the premises. The words "or now having" following the word "introducing" in the provision can only refer to electric fixtures, lighting and wiring which had been previously introduced in the premises by the tenant under a prior lease, as it is manifest that the tenant could not ("now") have electric lighting on the leased premises before the contract was made and he had acquired possession. Accordingly, the pertinence of those words is limited to cases of renewals of the lease.

■■ Moreover, under the view of the Court of Appeal, this printed provision concerning the tenant's responsibility for electric lighting would be incompatible with the typewritten stipulation of the lease that "* * * the lessees are not bound to make any repairs resulting from structural defects * * *" on which plaintiffs depend. And, in such case, the typewritten provision would control as it is a general rule of interpretation of contracts that written or typewritten words prevail over conflicting printed matter. Hagan v. Scottish Union & National Ins. Co., 186 U.S. 423, 22 S.Ct. 862, 46 L.Ed. 1229; Pacific Rice Mills v. Westfeldt Bros., 5 Cir., 31 F.2d 979; Alex F. Dreyfus Co. Inc. v. Breen, 13 La.App. 479, 126 So. 264; Rabinowitz v. Hurwitz-Mintz Furniture Co., 19 La.App. 811, 133 So. 498; Union Indemnity Co. v. F. D. Harvey & Co., La.App., 148 So. 501, affirmed La.App., 151 So. 776; Stamm Scheele Inc. v. Loewer, La.App., 149 So. 908 and Smooth v. Metropolitan Life Ins. Co., La.App., 157 So. 298.

The decision of the Court of Appeal is reversed and the judgment of the district court is now reinstated and affirmed at defendants' costs.